# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Perfection Cleaning and    :
Scott Petryshak,       :
       Petitioners   :
             :
    v.       :  No. 1327 C.D. 2023
             :
Department of Labor and Industry, :
       Respondent :  Submitted: October 8, 2024


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
       HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
       HONORABLE MATTHEW S. WOLF, Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF            FILED: November 19, 2024

    Perfection Cleaning and Scott Petryshak (collectively, Perfection) petition for review from the September 18, 2023 decision and order of the Department of Labor and Industry (Department). The Department denied Perfection's petition for reassessment of its required contributions to the unemployment compensation system after concluding that Perfection's workers were employees and not independent contractors under Section 4(*l*)(2)(B) of the Unemployment Compensation Law (Law or UC Law).[1] For the reasons that follow, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess. P.L. (1937) 2897, *as amended*, 43 P.S. § 753(*l*)(2)(B).

## BACKGROUND

Perfection is a sole proprietorship owned by Petryshak. On July 30, 2019, the Department's Office of Unemployment Compensation Tax Services Office (Tax Services Office) filed a Notice of Assessment against Perfection assessing a total of $49,248.19 in unemployment compensation contributions and interest owed from 2015 through the second quarter of 2019.[2] Perfection filed a petition for reassessment, on which the Department conducted a hearing on September 7, 2022.

At the hearing, the Tax Services Office offered the testimony of Rachel Daley, an Unemployment Compensation Tax Agent with the Department. Ms. Daley explained that on May 7, 2019, she conducted an audit of Perfection for the period of January 1, 2015 through March 31, 2019. Certified Record (C.R.), Item No. 15 (Notes of Testimony (N.T.)) at 19. She testified that Perfection had not reported any wages for this time period. *Id.* at 20-21. Ms. Daley detailed the audit process, which consisted of her review of all records made available by Perfection, including tax returns, check registers, Internal Revenue Service Form 1099s, and other disbursement records. *Id.* She explained that the audit did not reveal any evidence that Perfection's employees were independent contractors and exempt from unemployment contributions. *Id.* at 23, 24, 28, 29, 31, 32, 34, 35, 38. Ms. Daley testified that following review of Perfection's records and input of the relevant information into the Department's audit program, she sent the findings to Petryshak for review, and he disagreed. *Id.* at 39. She explained that when an employer does

---

[2] Section 301 of the Law requires employers to pay contributions into the UC system, the amount of which is based on employee wages and calculated using a statutory formula. 43 P.S. § 781.

2

not agree, the next step is to send a notice of assessment, which she did on July 30, 2019. *Id.* at 42.

Petryshak, appearing *pro se*, testified on behalf of Perfection. He explained that his wife started Perfection in 2002. N.T. at 64. In 2010, due to his wife's illness, he took over Perfection and discovered it owed $17,000 in contributions to the unemployment compensation system. *Id.* at 65. Petryshak testified that when he took over the business, he met with the Johnstown Unemployment Compensation Office, which helped him transition Perfection's business model from having employees to utilizing independent contractors. *Id.* at 64-65. Petryshak advised that since 2010, Perfection has continued to do business under the independent contract model. *Id.* at 66. At the time of the May 7, 2019 audit, Petryshak testified that he was completely unaware that Perfection had violated any law in Pennsylvania based on the guidance provided to him by the Johnstown Unemployment Compensation Office. *Id.* at 66.

Petryshak described that the various individuals working for him have their own route, pick their own jobs, work their own hours and days, and do what jobs they want to do. N.T. at 69-70. He stated that from the time he first meets with a potential hire, he explains to them that they are an independent contractor, they need to have general liability insurance, and they need to have a Form 1099 filled out. *Id.* at 93-94. All individuals working for Perfection utilized their own vehicles for work and were not required to wear any type of uniform. *Id.* at 96. In terms of whether the individuals work solely for Perfection, Petryshak explained "not only did these people work for us on job days that they wanted, the hours they wanted, doing whatever it is that they wanted to do, but they also did jobs for other people. They did jobs for [*sic*] their own for other people as well." *Id.* at 70, 84. The hearing

3

officer specifically questioned Petryshak about his employees working for others as follows:

> [Hearing Officer]: So, these workers who had been employees that were transitioned to be independent contractors, again, speaking specifically at the time of the audit, did they operate their own businesses? Were they independently established in a business at the time of this transition? Like immediately before the transition, I guess I should ask.
>
> [Petryshak]: I don't – I can only tell you that some of these people that were working for us did their own cleaning jobs on their own at that time. That wasn't unusual or uncommon at all.
>
> [Hearing Officer]: When you say they did their own cleaning jobs, do you know how those cleaning jobs were arranged?
>
> [Petryshak]: I really never tried to pry into anyone's business. I know they told me that they had jobs that they had to clean particular homes or businesses on --- on a certain day and that they can work for me other days. That's what I know. Now, not everyone owned their own businesses or acted in that matter at the time of the transition. So, you know, it wasn't across the board, that's the way that it was. But it certainly was the case in many --- in many instances. I hope that answered.

N.T. at 85-86. Petryshak did not enter any exhibits into the record.

The Tax Services Office called Ms. Daley on redirect and questioned her about whether Petryshak provided any evidence that the individuals working for him have their own independent businesses during or after the audit:

> [Department's Counsel]: . . . What type of evidence of exemption do you typically find when an employer believes these workers are independent contractors?

4

[Ms. Daley]: Invoices, business cards, advertisements for their business --- um, sometimes they have insurance certificates, perhaps websites. Just anything that shows they have their own independent business.

[Department's Counsel]: So, at the audit or after the audit, did you receive anything from Perfection [] that would have been, say, business cards or flyers that these cleaners have been putting out to show that they are running their own business on the side?

[Ms. Daley]: No.

N.T 101-02.

Following the hearing, the Department issued a final decision and order denying Perfection's petition for reassessment. The Department concluded that while Petryshak's testimony established that workers were not subject to Perfection's direction and control for purposes of the first prong of the Section 4(*l*)(2)(B) test, Perfection failed to establish the second prong, *i.e.*, that individuals working for Perfection were customarily engaged in an independently established trade, occupation, profession or business. Thus, the Department concluded Perfection is an employer under the UC Law. Perfection petitioned this Court for review.

**RELEVANT LAW**

We begin with a review of the relevant law. Section 301(a)(1) of the Law requires employers to pay unemployment compensation contributions based on their employees' wages. 43 P.S. § 781(a)(1). The Law defines "employment" as "all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral, including service in interstate commerce, and service as an officer of a corporation." Section 4(*l*)(1) of the Law, 43 P.S. § 753(*l*)(1). This Court has explained:

5

> "Once the Department shows that an individual is performing services for wages, as that term is defined under the [Law], the burden shifts to the taxpayer to bring itself within an exception" that would relieve the employer of having to pay contributions. *A Special Touch v. Dep't of Lab. & Indus.*, [] 228 A.3d 489, 503 ([Pa.] 2020) (quotation marks omitted). Employer contributions are a tax and therefore are to be construed in the employer's favor, but the burden of disproving an individual's employee status is heavy. *Jia v. Unemployment Comp. Bd. of Rev.*, 55 A.3d 545, 548 (Pa. Cmwlth. 2012); *Gulf & W. Corp. v. Dep't of Lab. & Indus., Off. of Emp. Sec.*, []459 A.2d 1369, 1371 ([Pa. Cmwlth.] 1983).

*Linda's Cleaning Consultants, Inc. v. Dep't of Lab. & Indus.*, 308 A.3d 962, 968 (Pa. Cmwlth. 2024). Relevant here is the Section 4(*l*)(2)(B) exception, which delineates an employee from an independent contractor. The exception provides that an employer seeking to establish that an individual who has performed services for remuneration is an independent contractor must show that "(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business." 43 P.S. § 753(*l*)(2)(B). The employer must establish both factors, and whether it has done so is a question of law subject to this Court's review. *Linda's Cleaning Consultants*, 308 A.3d at 968.

**ISSUES**

Perfection raises eight issues on appeal,[3] which can be distilled to three main challenges to the Department's decision and order.[4] First, Perfection asserts it

---

[3] This Court's scope of review determines whether the necessary findings of fact are supported by substantial evidence, whether the Department committed an error of law, or whether constitutional rights were violated. *Linda's Cleaning Consultants, Inc. v. Dep't of Lab. & Indus.*, 308 A.3d 962, 968 n.3 (Pa. Cmwlth. 2024).

[4] Perfection's Statement of Questions Involved provides, verbatim:

> * Should the PA. UC be able to override guidance and direction on how to utilize independent contractor, based on there [sic] own original guidance?
>
> * Should the PA. UC be able to enforce independent contractor guidelines that are not readily available or are ever distributed in writing to any 1099 workers, or are ever found with W9 instruction?
>
> * Should the findings of a PA. UC be enforceable, given the fact that no one knows the laws on independent contractors exist?
>
> * Should the fact finding hearing be conducted by a PA. Labor and Industry Representative or should it be conducted with an independent arbiter?
>
> * If it is acceptable for Labor and Industry paid arbiter to oversee hearings what percent of hearings are dismissed?
>
> * If employees of PA. Labor & Industry, Office of Unemployment Compensation located in the Harrisburg Office, do not know the independent contractor laws exist, then how should I know?
>
> * If the PA. Labor and Industry Supervisors believe that what the audit team does is wrong and I should not let them get away with it. Should I let them get away with it?
>
> * In 2012-2014 the PA. Dept. of Labor and Industry Office of Workmans Compensation, conducted hearings with Perfection Cleaning and was charged with being an employer and not carrying workmans comp insurance Perfection Cleaning was found not to be

**(Footnote continued on next page…)**

7

relied on guidance from the Johnstown Unemployment Compensation Office in establishing its independent contract business model and the Department cannot now reach the conclusion that Perfection's workers are employees instead of independent contractors. Second, Perfection takes issue with the hearing process, asserting that the hearing should not be conducted by a Department representative, but rather by a neutral arbiter. Third, Perfection references a workers' compensation proceeding that took place between 2012 and 2014, where it was purportedly found not to be an employer under the Workers' Compensation Act.[5] Perfection asserts the Department cannot now reach an alternative conclusion on whether it is an employer in the instant litigation.

The Department responds that each of Perfection's issues on appeal lack merit. To the extent Perfection raises an equitable estoppel argument on the basis of purported communications with an individual from the Johnstown Unemployment Compensation Office, that argument is undeveloped. The Department notes that while Petryshak testified that he had conversations with the staff at the Johnstown Unemployment Compensation Office, he did not enter any evidence documenting those conversations or detailing the alleged guidance provided. Therefore, the record does not support any claim for equitable relief. Second, the Department maintains that the UC Law does not provide for a hearing by an outside arbiter. Here, the Department held a hearing on Perfection's petition for reassessment in accordance with Section 304(e) of the Law.[6] The Department

---

> an employer and the case was dismissed. How can the same PA.
> Dept. of Labor and Industry now say I am an employer?

Perfection's Brief at 8 (electronic pagination).

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[6] Section 304(e) provides:

**(Footnote continued on next page…)**

8

maintains that agencies regularly serve as both prosecutor and adjudicator and that process alone does not present any constitutional or fairness concerns. Third and finally, the Department maintains that any conclusion regarding whether Perfection was an employer under the Workers' Compensation Act is irrelevant to the case *sub judice*. The UC Law imposes no requirement that the Department consider determinations issued by other agencies when determining whether an employer is liable for contributions.

## DISCUSSION

We agree with the Department that each of Perfection's challenges to the Department's decision and order lack merit.

First, to the extent Perfection attempts to assert an equitable estoppel claim based on Petryshak's conversations with the staff at the Johnstown Unemployment Compensation Office, that argument is underdeveloped. Equitable estoppel recognizes that "an informal promise implied by one's words, deeds, or representations, which leads another to rely justifiable thereon to his own injury or

---

(e) In any hearings held by the department in pursuance of the provisions of this section the department is hereby authorized and empowered to examine any person or persons under oath concerning any matters pertaining to the determination of the liability of the employer for contributions under the provisions of this act and to this end may compel the production of books, papers and records and compel the attendance of all persons, whether as parties or witnesses, whom and which the department believes to have or contain knowledge or information material to such determination. The conduct of hearings and appeals before the department shall be in accordance with rules of procedure prescribed by the department, whether or not such rules conform to common law or rules of evidence or other technical rules of procedure, but shall be under supervision of the Office of General Counsel in accordance with the act of October 15, 1980 (P.L. 950, No. 164), known as the "Commonwealth Attorneys Act[," 71 P.S. §§ 732-101-732-506.]

43 P.S. § 784(e).

9

detriment, may be enforced in equity." *Kuharchik Constr., Inc. v. Com.*, 236 A.3d 122, 136 (Pa. Cmwlth. 2020). This Court has explained that "[t]he burden rests on the party asserting the estoppel to establish such estoppel by clear, precise, and unequivocal evidence." *Id.* Here, Petryshak's testimony that he conversed with representatives of the Johnstown Unemployment Compensation Office about changing his business model does not constitute clear, precise and unequivocal evidence sufficient to establish equitable estoppel. In fact, when prompted at the hearing, Petryshak was unable to provide any documentation or other evidence of said conversations. *See* N.T. at 95. Most notably, however, this Court has explained that "[w]hile equitable estoppel may be asserted against the government, estoppel will not lie against the government where the acts of the governmental entity's employees or agents are in violation of positive law." *Kuharchik*, 236 A.3d at 122 (internal quotations omitted). "No errors or misinformation of officers or agents can estop the government from collecting taxes legally due." *Id.* (quoting *Com. v. Western Maryland R.R. Co.*, 105 A.2d 336, 341 (Pa. 1954)). Therefore, even if Petryshak had provided evidence that the staff at the Johnstown Unemployment Compensation Office misinformed him about how to create an independent contractor business model, such evidence could not serve to estop the collection of UC contributions legally due.

Second, we also reject Perfection's assertion that the Department's hearing process is unfair or constitutionally infirm. Our Supreme Court has long stated that "[i]t is not uncommon for large agencies to fulfill both the prosecutor and judicial functions . . . . So long as the functions are separated adequately, Due Process is served." *State Dental Council and Examining Bd. v. Pollock*, 318 A.2d 901, 914-15 (Pa. 1974). Here, Perfection's petition for reassessment was prosecuted

10

by the Tax Services Office and heard by the Department's Unemployment Compensation Tax Review Office. Indeed, at the outset of the hearing, the hearing officer noted this distinction and assured the parties that "a wall of separation [] exists" between the Tax Services Office and the hearing officer. N.T. 13. Accordingly, Perfection's claim challenging the administrative structure set forth in the UC Law fails.

Third and finally, we reject Perfection's claim that the Department must conclude it is not an employer under the UC Law based on previous workers' compensation proceedings. As this Court has stated, "legal issues in workers' compensation are different from the legal issues in UC cases; therefore, [a c]laimant's successful outcome in his workers' compensation case does not compel a successful outcome in his UC case." *Kundus v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 782 C.D. 2013, filed November 13, 2013), slip op. at 7 n.8.[7]

## CONCLUSION

For these reasons, the Department's decision and order denying Perfection's petition for reassessment is affirmed.

_____
MATTHEW S. WOLF, Judge

---

[7] Unreported opinions of this Court filed after January 15, 2008, may be cited for their persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Perfection Cleaning and :
Scott Petryshak, :
                        Petitioners :
                               :
           v. : No. 1327 C.D. 2023
                               :
Department of Labor and Industry, :
                      Respondent :

# **O R D E R**

AND NOW, this 19th day of November 2024, the September 18, 2023 decision and order of the Department of Labor and Industry is AFFIRMED.

 

                                          _____

                                          MATTHEW S. WOLF, Judge