397 A.2d 779

COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellee,

v.

UEC, INC., Appellant.

Supreme Court of Pennsylvania.

Argued Nov. 14, 1978.

Decided Jan. 24, 1979.

504

Ronald M. Katzman, Harrisburg, for appellant.

Allen C. Warshaw, Deputy Atty. Gen., Dept. of Justice, Harrisburg, for appellee.

Before EAGEN, C. J., and ROBERTS, NIX, MANDERI-NO and LARSEN, JJ.

OPINION

LARSEN, Justice.

On May 2, 1973, appellants, UEC, Inc. (Universal Education Corporation, Inc., hereinafter "UEC") filed with the Board of Arbitration of Claims (the Board) a complaint against the Commonwealth, Department of Public Welfare (DPW), appellee, seeking damages for breach of certain written and oral contracts. DPW filed preliminary objections to the complaint, which objections were dismissed by the Board. DPW appealed the dismissal of their preliminary objections to Commonwealth Court which reversed the Board, sustained DPW's preliminary objections and dismissed UEC's complaint. *Commonwealth, Dep't. of Pub. Welfare v. UEC, Inc.,* 19 Pa.Cmwlth. 461, 338 A.2d 730 (1975). This appeal followed.

In deciding the efficacy of DPW's preliminary objections and the correctness of the decisions of the tribunals below, we must accept as true all well-pleaded material facts set forth in UEC's complaint, as well as all inferences reasonably arising therefrom. *Reardon v. Wilbur,* 441 Pa. 551, 272 A.2d 888, 889 (1971). We, therefore, set forth the relevant facts of the case as pleaded in the complaint.

UEC entered into a written contract with the Commonwealth of Pennsylvania on June 15, 1970 whereby UEC was to receive compensation of approximately $4,000,000 for providing program design and development, staff training and management for a system of model day-care centers. The term of the contract was from June 15, 1970 to June 14, 1971 and thereafter from year to year subject to cancellation by either party on sixty days written notice. On April 14, 1971, the Commonwealth sent a telegram to UEC announcing the cancellation of the contract. Shortly thereafter, high officials of the Commonwealth, namely Governor Milton Shapp, Attorney General J. Shane Creamer and DPW

General Counsel Marx S. Leopold, informed UEC that, notwithstanding the telegram of April 14th, negotiations to extend the contract were reopened. During the negotiations on contract extension, UEC agreed to maintain its operations at a reduced level in order to avoid new start-up costs should the contract be renewed. Operations continued until October 14, 1971, at which time the Commonwealth informed UEC, for the first time since its telegram of April 14th, that the contract would not be renewed. UEC immediately terminated operations under the contract.

From October 14, 1971 until February 15, 1973, the Commonwealth, through its agents and officers including (according to the complaint) the Governor, the Secretary of Public Welfare, Helen Wolgemuth and the DPW General Counsel Leopold, continued on numerous occasions to give assurances of its intention to pay UEC the balance due under the contract. At some point during this period, however, a dispute arose as to the exact amount of compensation remaining to be paid (some $1,130,000 of the total amount had been paid). Thereafter, on or about January 18, 1972, Secretary Wolgemuth and General Counsel Leopold orally agreed with UEC that the Commonwealth would pay, and UEC would accept in compromise and settlement, an amount to be determined through an audit conducted by the United States Department of Health, Education and Welfare (HEW).[1] HEW was to calculate the amount owed to UEC on a quantum meruit basis, i. e., the reasonable value of the services performed.

Pursuant to this oral agreement of January 18, 1972, the Commonwealth per Secretary Wolgemuth requested HEW to conduct the audit. HEW conducted the audit during the period from March 21, 1972 to November 22, 1972, and concluded that the total value of the services performed by UEC was an amount in excess of $2,500,000. The Commonwealth was informed of the results of the audit in Novem-

---

1. HEW's involvement was logical as the Federal government was to reimburse the Commonwealth for 75 per cent of the day-care operation costs.

ber, 1972 but, despite the continued assurances that the Commonwealth intended to pay the balance owed UEC, refused to compensate UEC in accordance with either the written contract or the oral agreement of January 18, 1972. At no time has the Commonwealth suggested that UEC did not perform its services in accordance with the terms of the contract nor has it suggested that UEC has breached the contract in any manner that might relieve it (the Commonwealth) from its obligation to compensate UEC.

On the facts as recited, UEC alleged two causes of action in its complaint which it filed on May 2, 1973 with the Board. The first asked for enforcement of the contract price and for consequential damages caused by impairment of UEC's cash flow, damage to its business reputation and deprivation of the opportunity to obtain similar contracts with other states. The second cause of action sought enforcement of the oral compromise and settlement agreement. The Commonwealth Court sustained DPW's preliminary objections reasoning that the first cause of action was barred because the action was not brought within six months of the accrual of the cause of action (which they calculated to be October 14, 1971), as required by statute for claims brought against the Commonwealth. Act of May 20, 1937, P.L. 728, No. 193, *as amended*, 72 P.S. § 4651–6, *as amended* (1968).[2] The second cause of action was also, according to Commonwealth Court, barred by statute, the Administrative Code of 1929, Act of April 9, 1929, P.L. 177 § 512, *as amended*, 71 P.S. § 192, *as amended* (Supp.1978–79),[3] which statute was construed by the Commonwealth Court to preclude DPW from entering into a "compromise and settlement agreement" with UEC without first refer-

**2.** 72 P.S. § 4651–6 reads, in relevant part: "The board [of arbitration of claims] shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued."

**3.** That statute provides "when any legal difficulty or dispute arises, or litigation is commenced or to be commenced in which any department, board, commission, or officer, is concerned . . . it shall be the duty of such department, board, commission, or officer, to refer the same to the Department of Justice."

ring the matter to the Department of Justice. Having failed to so refer the case, the court held that DPW was without authority to bind the Commonwealth to the oral agreement and, therefore, UEC could not enforce said agreement. We disagree with Commonwealth Court as to both causes of action.

Initially, appellants assert that the Commonwealth Court was without jurisdiction to hear the appeal because appeals are allowed only from actions of the Board either dismissing the claim or making an award, *see* 72 P.S. § 4651–8(b), and that, therefore, the order of Commonwealth Court should be vacated. Appellant's argument ignores the distinction between appeals as of right and discretionary appeals. While it is true that appeals *as of right* may only be taken from the two Board actions mentioned above, 72 P.S. § 4651–8(b) imposes no prohibition against the utilization of the discretionary appeal process. This was the procedure used in the instant case. The Board certified their interlocutory order dismissing DPW's preliminary objections as involving a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal would materially advance the ultimate determination of the litigation. The certification thus complies with section 501(b) of the Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.501(b) (Supp.1978–79) regarding discretionary appeals from interlocutory orders, and the Commonwealth Court acted well within the bounds of their discretionary authority to hear the appeal.[4]

4. This provision reads:

Discretionary Allowance of Appeals—When a court or administrative agency, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such order.

The Judicial Code retains this provision for discretionary appeals from interlocutory orders in essentially the same language. The

Proceeding to the merits, therefore, we find that the Commonwealth Court erred in dismissing the claim as untimely filed because of failure to file within six months of the accrual of the cause of action.[5] The error lies in the failure to consider the doctrine of estoppel as preventing the Commonwealth from asserting the six-month limitation on claims as a defense to its obligations under the contract.

There are certain well settled legal principles applicable to the case at bar.

[I]f through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of limitation of action. (citations omitted) The burden of proving the existence of such fraud or concealment is upon the asserting party by evidence that is clear, precise and convincing. (citations omitted) It is also well established that mere negotiations toward an amicable settlement afford no basis for an estoppel, nor do mis-

Judicial Code, *as amended* by Act of April 28, 1978, P.L. 202, No. 53, § 10(2), 42 Pa.C.S. § 702(b) (1978 pamphlet).

Appellants argue that the Commonwealth Court erred in allowing this appeal, relying on *Young v. Commonwealth,* 89 Dauph. 233 (1968) and *Allan H. Lashner, Inc. v. Commonwealth,* 46 D. & C.2d 163, 90 Dauph. 135 (1968), for the proposition that appeals from orders of the Board are proper only when the Board has dismissed the claim or has made an award. This reliance is misplaced as these cases were decided before the Appellate Court Jurisdiction Act of 1970 created the machinery for discretionary allowance of appeals from interlocutory orders. Given that Act, the cases cited by appellant are distinguishable.

Appellants also argue that the Commonwealth Court should not have considered the issue of the "statute of limitations" at the preliminary objection stage of the proceedings. This argument notes that Pa.R.C.P. 1017(b)(4) allows a "non-waivable" statute of limitations to be raised by preliminary objection only when its applicability is clear "on the face of the complaint." The opinion of Commonwealth Court clearly and correctly treated the issue as one where the applicability of the statute of limitations was "clear on the face" of the pleadings, and, therefore, the Rules of Civil Procedure allowed 72 P.S. § 4651–6 to be pleaded by preliminary objections. Appellants highly technical argument then (that the order of Commonwealth Court should be vacated because the statute should have been raised by way of New Matter) is unpersuasive.

5. 72 P.S. § 4651–6, *as amended* (1968); *see,* note 2, *supra,* for the text of this provision.

takes, misunderstandings or lack of knowledge in themselves toll the running of the statute . . . (citations omitted)." *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 92–93, 204 A.2d 473, 475 (1964); *Walters v. Ditzler*, 424 Pa. 445, 449–450, 227 A.2d 833, 835 (1967).

We have further stated that the "fraud or concealment" necessary to establish a case for application of estoppel principles to prevent a defendant from asserting a statute of limitations does not mean fraud or concealment in "the strictest sense encompassing an intent to deceive, but rather fraud in the broadest sense which includes an unintentional deception . . . (citation omitted). It is not the intention of the party estopped but the natural effect upon the other party which gives vitality to an estoppel." *Nesbitt v. Erie Coach Co., supra* 416 Pa. at 96, 204 A.2d at 476–77; *Walters v. Ditzler, supra,* 424 Pa. at 449, 227 A.2d at 835.

■ The facts pleaded in UEC's complaint are clearly sufficient to demonstrate the propriety of applying estoppel to prevent the Commonwealth from asserting the bar of the six-month limitation of 72 P.S. § 4651-6. High Commonwealth officials, including the Secretary of DPW and its General Counsel, repeatedly gave UEC their assurances that the Commonwealth would compensate them (UEC) under the contract. In fact, they made partial payment and merely questioned the remainder owed. At no point has the Commonwealth ever denied liability for the debt owed UEC. Quite the contrary, the conduct of Commonwealth officials during the period from October 14, 1971 through February 15, 1973 was entirely consistent with an admission of liability for the debt. Seemingly amicable negotiations continued during that entire period, with full cooperation by UEC. These negotiations resulted in the HEW audit, requested by DPW (and consented to by UEC) which audit determined the reasonable value of UEC's services. Since the audit was, pursuant to the oral compromise and settlement agreement, necessary to establish the balance owed under that agreement, UEC reasonably delayed any possible legal action pending completion of the audit. Even after the audit was

completed, the Commonwealth *continued* to assure UEC of its intention to pay its obligation, lulling them into a false sense of security regarding the necessity for initiating legal action.

It would be difficult to imagine a situation more deserving of an application of the doctrine of estoppel. UEC has performed valuable services for the Commonwealth in the amount of over $2,500,000, has cooperated with the Commonwealth and has been more than accommodating in all respects. Yet the Commonwealth now seeks to avoid its contractual obligation by saying "too bad, you shouldn't have believed us when we told you we'd pay you." Such callous disregard for the rights of Commonwealth creditors cannot be tolerated.

Moreover, application of the doctrine of estoppel should not be denied merely because it is being asserted against the government. Many courts have exhibited great reluctance in applying the doctrine against the government. *See Estoppel Against the Government: Have Recent Decisions Rounded the Corners of the Agent's Authority Problem in Federal Procurements?,* 45 Fordham L.Rev. 497, 500 (1976) *and* Comment, *Never Trust a Bureaucrat: Estoppel Against the Government,* 42 S.Cal.L.Rev. 391, 393 (1969). The grounds generally advanced for this reluctance bear striking similarity to those offered in support of the doctrine of sovereign immunity. *Id.;* K. C. Davis, *Administrative Law* § 17.01 (1959). As we have recently discarded that doctrine because it was "unfair and unsuited to the times", *Mayle v. Pennsylvania Dep't. of Highways,* 479 Pa. 384, 388 A.2d 709, 710 (1978), it would be inconsistent to refuse to apply the doctrine of equitable estoppel to prevent assertion of a statute of limitation merely because it is applied against the Commonwealth when all of the traditional elements of estoppel have otherwise been established. We have upheld the use of estoppel principles against municipal government units, *Ervin v. City of Pittsburgh,* 339 Pa. 241, 14 A.2d 297 (1940) and have sanctioned the theory of estoppel *by laches* even against the Commonwealth, *Commonwealth ex rel.*

*Margiotti v. Union Traction Co. of Philadelphia,* 327 Pa. 497, 513, 194 A. 661, 692 (1937), but have not heretofore addressed the precise issue here, i. e., application of the doctrine of estoppel against the Commonwealth to prevent defensive use of a statute of limitation. (The estoppel herein, estoppel *in pais,* is distinct from estoppel by laches due to unreasonable delay by the party against whom it is asserted.) It is true, as Mr. Justice Holmes stated, that "[m]en must turn square corners when they deal with the Government." *Rock I., Ark. and La. R. R. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920). But as aptly put by Mr. Justice Jackson, "there is no reason why the square corners should constitute a one-way street." *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 387–88, 68 S.Ct. 1, 5, 92 L.Ed. 10 (1947) (Jackson, J., dissenting).

██ Appellees also argue that the limitation of 72 P.S. § 4651–6 is jurisdictional in nature ("the Board *shall have no power and exercise no jurisdiction* over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued") and that, as a limitation on the jurisdiction of the Board, the six-month period is not subject to waiver or estoppel. They cite several cases in support of this contention, *Drummond v. Drummond,* 414 Pa. 548, 200 A.2d 887 (1964); *Brenner v. Sukenik,* 410 Pa. 324, 189 A.2d 246 (1963); *Schleifer v. Zoning Bd. of Adjustment,* 374 Pa. 277, 97 A.2d 782 (1953). These cases, however, hold that *subject-matter* jurisdiction cannot be supplied by waiver, estoppel or agreement of the parties. Where a tribunal has no authority to hear a particular *type* of case, actions of the parties cannot supply that authority. Where, however, the limitation on jurisdiction is over *the parties,* they can supply the requisite jurisdiction by their conduct. *See Schleifer v. Zoning Bd. of Adjustment, supra.* In the instant case, the Board is empowered to hear cases involving claims against the Commonwealth, i. e., they have *subject-matter* jurisdiction. 72 P.S. § 4651–6 operates as a limitation on jurisdiction over the Commonwealth as a party—it is a limitation on jurisdiction over the person/par-

ty and inures to the benefit of the Commonwealth. As such, the limitation may be affected by conduct of the Commonwealth amounting to waiver or estoppel, or by agreement of the parties.

For the foregoing reasons, we hold that, under the circumstances set forth in the complaint and assumed true for the purposes of this appeal, the Commonwealth is estopped from asserting the defense of 72 P.S. § 4651–6,[6] and that the Commonwealth Court erred, therefore, in dismissing UEC's complaint as to the first cause of action.

The court's dismissal of the second cause of action on the rationale that DPW had no authority to enter into a "compromise and settlement" agreement was also erroneous. Section 512 of the Administrative Code of 1929, 71 P.S. § 192 (Supp.1978–79) does provide that *legal* difficulties or disputes shall be referred to the Department of Justice. Not every disagreement between parties is a "legal dispute" however, and, consequently, not every disagreement is required to be referred to the Department of Justice. The only matters required to be submitted to that Department under the Administrative Code are:

(1) administrative questions of a legal nature affecting the harmony which should exist between two or more of the executive departments of the State; (2) doubtful legal questions, not theretofore passed upon by the courts or the attorney general, which affect any state officer's performance of his official duties; and (3) proceedings which have

6. Our holding today does not affect the validity of *Commonwealth v. Western Maryland R. R. Co.,* 377 Pa. 312, 105 A.2d 336 (1954) and cases of similar ilk wherein a party seeks to apply the doctrine of estoppel by laches against the governmental unit *to prevent it from exercising some governmental function.* For example, in the *Western Maryland* case, the railroad company sought to prevent the Commonwealth from collecting a particular tax on the grounds that, since the Commonwealth failed to collect such a tax for the twenty years prior, they should be estopped from collecting it then. We held that failure to collect the tax in the past is no bar to present collection. Mistaken indulgence by, or errors of, the Commonwealth in the past do not insulate the taxpayer from tax liability for subsequent years. Our decision today does not alter that result.

resulted or likely will result in litigation in which the State is interested.

See *Commonwealth ex rel. v. Lewis*, 282 Pa. 306, 317–18, 127 A. 828 (1925) (emphasis added) (construing an earlier version of the Code substantially similar in all relevant aspects). Clearly the Code provision was not intended to burden the Department of Justice with every conflict arising between an agency of the Commonwealth and one of its citizens. It is only when litigation has begun or is imminent that referral to the Department of Justice is necessary.

In the present case, such referral was not mandated by the Administrative Code. It did not become apparent that litigation was *imminent* until after completion of the HEW audit *and* until after DPW decided it would not compensate UEC for its services. (This decision occurred, apparently, sometime between November 9, 1972 and the filing of the complaint on May 2, 1973.) At the time the "compromise and settlement" agreement was reached, in January, 1972, the parties were involved in amicable negotiations. Therefore, the Commonwealth Court was wrong in finding that Secretary Wolgemuth and General Counsel Leopold had no authority to enter into the "compromise and settlement" agreement.[7]

Order of the Commonwealth Court dismissing complaint is reversed; order of the Board of Arbitration of Claims dismissing preliminary objections is reinstated; case remanded to the Board of Arbitration of Claims for further proceedings on the complaint.

7. Furthermore, the estoppel analysis discussed in relation to the six-month statutory limitation on filing claims applies with equal force to the second cause of action. The Administrative Code was certainly never intended to thwart the citizens of this Commonwealth in their efforts to collect valid debts against the Commonwealth. Even if there was a duty on the part of DPW to refer the matter to the Department of Justice, the failure to do so was in no way caused by UEC. In fact, UEC would have no way of knowing whether or not the matter had been so referred unless notified by DPW or the Department of Justice. Under these circumstances, the Commonwealth is estopped from asserting lack of authority to compromise and settle their agreement with UEC.

O'BRIEN, J., did not participate in the decision of this case.

POMEROY, former J., did not participate in the consideration or decision of this case.

EAGEN, C. J., and ROBERTS, J., concur in the result.