411 A.2d 1198

Billy BERRY; Edison J. Eby; Mike Hryhorchuk; Clevon Bryant; Robert Cousar; Richard Dease; John Emery; William Freeman; Joseph Jacobs; Daniel Johnson; Walter Johnson; Robert L. McCain; Jeddie Releford; James Spearman; Eddie Tillery; Lawrence Thomas; Wayne Thompson; John Wiley, Appellants,

v.

COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 9, 1979.

Decided Feb. 1, 1980.

Reargument Denied March 24, 1980.

Harold I. Goodman, Philadelphia, for appellants.

Michael D. Klein, Asst. Atty. Gen., Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Appellants, Billy Berry, Edison Eby and sixteen others, are among ninety-seven former maintenance and production workers of the George Sall Metal Company and members of

Teamster's Local 115, who began a work stoppage on May 18, 1973, and subsequently filed claims for unemployment compensation benefits with the Bureau of Unemployment Compensation (Bureau). The Bureau initially denied the claims of all those involved in the work stoppage after determining they were disqualified from receiving benefits because their unemployment was a result of a labor dispute within the terms of Section 402(d) of the Pennsylvania Unemployment Compensation Act of 1937.[1] Among the instant appellants, only Edison Eby formally appealed the determination of the Bureau denying benefits within the ten days mandated by Section 501 of the Act.[2] Appellant Eby requested a hearing before a referee which took place on September 26, 1973. The referee held the work stoppage was the result of a labor dispute and affirmed the determination of the Bureau denying benefits. After review, the Unemployment Compensation Board of Review (Board) affirmed the decision of the referee on March 6, 1974. No further appeal ensued.

The case of a co-worker, Charlie Davis, moved more slowly through the administrative process. Following the initial denial of benefits, Davis appealed and requested a hearing before a referee. Davis was represented by counsel at the hearings which took place on April 3, 1974 and September 3, 1974. The referee affirmed the Bureau determination denying benefits. Davis then appealed to the Board which, on April 30, 1975, reversed the decision of the referee after oral argument and awarded Davis benefits on the ground the work stoppage at George Sall Metal Company was the result of a lockout by the employer.[3]

1. Act of December 5, 1936, Second Ex. Session, P.L. (1937) 2897, §§ 2 et seq., as amended, 43 P.S. §§ 751 et seq. [hereinafter cited as the Act].

2. A 1976 amendment extended the time for appeal to fifteen days, Act of April 14, 1976, P.L. 113, No. 50, § 1, 43 P.S. § 821(c) (Supp.1979–80).

3. Section 402(d) of the Act, which excludes payment of compensation in cases of work stoppage resulting from labor disputes, specifically excepts lockouts.

Upon learning of the decision in the *Davis* case, appellants retained counsel. Appellant Eby requested reconsideration of his case by the Board, and the remaining appellants requested permission to make nunc pro tunc appeals. The Board refused to grant relief on the basis that the absence of timely appeals rendered the decisions final and the mandatory language of the Act prohibits the Board from reconsideration of final decisions.[4] The Commonwealth Court affirmed the decision of the Board, holding that the appeal provisions of the Act are mandatory and admit of only one exception: proof that fraud or its equivalent by the administrative authorities prevented filing of timely appeals. *Berry v. Unemployment Compensation Board of Review*, 33 Pa. Cmwlth. 565, 382 A.2d 487 (1978). We granted appellants' petition for allowance of appeal.

Appellants would have us carve out an exception to the mandatory appeal requirements of the Act to provide for reconsideration of Bureau determinations and Board decisions upon proof of fraud by a party opponent to the proceedings or a showing of newly discovered, previously unavailable evidence. Both the Commonwealth Court and the Superior Court[5] have decided numerous cases on the principle that neither courts nor the compensation authorities have jurisdiction to extend the time for an appeal from denial of benefits, absent a showing of fraud or its equivalent on the part of the administrative authorities. See, e. g., *Unemployment Compensation Board of Review v. DeVictoria*, 24 Pa.Cmwlth. 143, 353 A.2d 920 (1976); *Unemployment Compensation Board of Review v. Ferraro*, 22 Pa.Cmwlth. 304, 348 A.2d 753 (1975); *Unemployment Compensation Board of Review v. Buongiovanni*, 21 Pa.Cmwlth. 338, 345

4. Section 509 of the Act, 43 P.S. § 829, provides in pertinent part: "Any decision made by the department or any referee or the board shall become final ten days after the date thereof, and shall not be subject to collateral attack as to any application claim or claims covered thereby or otherwise be disturbed, unless appealed from, as hereinbefore provided . . . ."

5. Jurisdiction of appeals from decisions of the Board resided in the Superior Court before foundation of the Commonwealth Court. Section 509 of the Act, 43 P.S. § 829.

A.2d 783 (1975); *Ferretti Unemployment Compensation Case,* 195 Pa.Super. 234, 171 A.2d 594 (1961); *Flynn Unemployment Compensation Case,* 192 Pa.Super. 251, 159 A.2d 579 (1960); *Bee Unemployment Compensation Case,* 180 Pa.Super. 231, 119 A.2d 558 (1956).

A comparison of the transcripts of the hearing in appellant Eby's case with the transcript of the hearings in the *Davis* case reveals that many of the same facts were elicited in both proceedings. However, they were presented more effectively at the *Davis* hearings. Many of the facts testified to by witnesses at the *Davis* hearings could have been presented by appellant Eby at his hearing, but were not. Moreover, seventeen of the eighteen instant appellants did not seek a hearing before a referee, but rather accepted the Bureau's determination denying benefits without seriously pursuing their rights to administrative review in a timely fashion. Appellants have presented no compelling reasons to interfere with the legislatively mandated scheme for distribution of unemployment compensation benefits.

Orders affirmed.

MANDERINO, J., did not participate in the decision of this case.

LARSEN, J., filed a dissenting opinion in which FLAHERTY, J., joined.

LARSEN, Justice, dissenting.

I dissent. When appellants filed their claims with the Bureau of Unemployment Compensation, the claims were denied primarily because of representations made to the Bureau by the employer, the George Sall Metal Company, that the company was negotiating with appellants' union and was willing to execute a new contract with the union. The employer further stated that work remained available to appellants. Based on these representations, the Bureau

decided appellants' unemployment was due to a labor dispute and denied benefits.

Subsequent events occurred which established that the employer's representations were false. In the case of Charlie Davis, the Bureau's Board of Review was sufficiently impressed by these subsequent events to find that the work stoppage was the result of a lockout. The Board of Review made the following findings of fact:

.    .    .    .    .

2. Prior to March 19, 1973, claimant and the production employees of the [George Sall] company were members of the Firemen and Oilers Union.

3. In March 1973, claimant and the production workers of the company elected to become members of Teamsters Union Local 115, and on March 19, 1973, Teamsters Union Local 115 became the certified bargaining representative for all the production workers of the company.

4. The existing Union-management agreement between the Fireman and Oilers Union and the company was rejected April 1, 1973.

5. Teamsters Local 115, upon being certified as the bargaining representative for the production workers, notified the company that they wished to negotiate terms of a new agreement.

6. The company and Local 115 met on various occasions during the month of April to reach agreement on new terms for a contract.

7. On or about May 1, 1973, the company informed the union that in November 1972, the parent company of George Sall Metal Company, Inc., had decided to sell George Sall Metal Company, Inc., and the Company also informed the union it should bargain with the prospective buyer of the parent facilities of George Sall Metal Company, Inc.

8. The Union met with the prospective purchaser to negotiate terms for a new agreement.

9. The prospective buyer failed to purchase the facilities of George Sall Metal Company, Inc.

10. On May 17, 1973, the employer began moving all of its machinery and inventory out of the plant facilities.

11. On May 18, 1973, the Union placed picket lines around the employer's premises.

12. The claimant and the production workers of the company continued to work under the same terms and conditions of the pre-existing contract from April 1, 1973, to May 17, 1973.

13. As of the date of the Referee's hearing, September 3, 1974, no purchaser has bought the George Sall Metal Company, Inc., facilities.

Based on these findings, the Board concluded the work stoppage was the result of the employer's refusal to maintain the status quo pending contract negotiations with the new union and that this placed the responsibility for the stoppage on the employer. The Board held:

> [T]he record further indicates that the company did not wish to negotiate with Teamsters Local 115, which represented claimant, and the production workers of the company; and even though the company was negotiating with Local 115, it had already decided to sell the facilities. Further, when the company on May 17, 1973, began moving all its equipment and inventory from the plant facilities, it was not maintaining the status quo pending further negotiations. Therefore, since the employer failed to maintain the status quo, the responsibility of the work stoppage must be borne by the employer, and the work stoppage constitutes a lockout.

The Bureau had initially rejected appellants' assertion that the employer had decided to close its plant and ignored their request for an investigation of the employer's operations to determine whether George Sall intended to close

down or maintain operations. While the Bureau was aware, at the time it rendered decisions in appellants' cases, that the employer had moved *some* machinery and inventory from the plant on the day preceding the work stoppage, the evidence was considered insufficient to demonstrate a lockout had occurred. Only after all of the plant's machinery and inventory had been removed, and a hollow shell remained, was the Bureau (the Board of Review) convinced the work stoppage was the result of George Sall's unwillingness to maintain the status quo pending contract negotiations.

When appellants filed their claims, they did not have the benefit of the employer's subsequent conduct, which conduct refuted its assertions that work was available to appellants and that it was not shutting down its facility. Since this conduct demonstrated the employer had misrepresented the facts in appellants' cases, I would hold that this deceit amounts to fraud and I would allow appellants to appeal the Bureau's determinations nunc pro tunc under these circumstances. It seems to me that an employee should not be denied unemployment compensation benefits which would have been granted him but for his employer's misrepresentations to the Bureau. To recognize such an exception to the ordinarily desirable rules of finality of administrative decisions would further the remedial purposes of the Unemployment Compensation laws which are to be construed liberally to accomplish those purposes. *See Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976). As we stated in *Unemployment Compensation Board of Review v. Jolliffe*, 474 Pa. 584, 586, 379 A.2d 109, 110 (1977), "[i]t is clear that [the Unemployment Compensation] Act is remedial in nature and 'its benefits and objectives shall not be frittered away by slavish adherence to technical and artificial rules' " (cites omitted), and especially, as here, when falsehoods are involved.

FLAHERTY, J., joins in this dissenting opinion.