Manfred R. Hauptmann, Petitioner v. Commonwealth of Pennsylvania, Department of Transportation, Respondent.

Argued March 2, 1981, before Judges MENCER, ROGERS and PALLADINO, sitting as a panel of three.

*Dona S. Kahn,* of counsel, *Harris and Kahn,* for petitioner.

*Louis G. Cocheres,* Assistant Attorney General, with him *Ward T. Williams,* Chief Counsel, for respondent.

OPINION BY JUDGE MENCER, May 27, 1981:

Manfred R. Hauptmann (petitioner) has appealed from a decision of the State Civil Service Commission (Commission) which upheld an action of the Department of Transportation (DOT) resulting in the furlough of the petitioner.[1] We vacate and remand.

The petitioner was employed by DOT as a Transportation Construction Manager I in District 6. In September 1977, the petitioner received a performance evaluation rating of 18.0. In June 1978, DOT furloughed every District 6 Construction Manager with a rating less than 18.4. Because of his collective bargaining right to "bump" less senior employees in other job classifications, the petitioner was transferred to the position of Transportation Construction Inspector II. In November 1978, DOT eliminated sev-

---

[1] The Commission order embraced three separate appeals consolidated for hearing. We are only concerned with the appeal of Manfred R. Hauptmann in this opinion and order.

eral positions within this classification and the petitioner was furloughed a second time due to lack of seniority.

The Commission upheld both furloughs because the petitioner had failed to appeal his rating of 18.0 within 20 days after he knew about it. On the facts recited above, we would be required to affirm the Commission on the basis of *Ellis v. Department of Transportation,* 33 Pa. Commonwealth Ct. 354, 381 A.2d 1325 (1978). There are additional problems in the present case, however, which were absent from *Ellis* and which require us to remand to the Commission for further proceedings.

The record in this case is totally devoid of evidence on the question of whether the performance rating was appealed in timely fashion. The Commission produced no evidence on the point, and it refused to permit the petitioner to introduce evidence which could have established that a timely appeal had been filed. The Commission reasoned that the petitioner was attempting a collateral attack on the finality of the performance rating. This refusal to take evidence was improper in this case because of the unusual facts involved.

The petitioner's offer of proof before the Commission alleged the following facts. When the performance rating was made on September 26, 1977, both the petitioner and the evaluator understood that contemporary DOT guidelines prohibited a rating in excess of 18.0.[2] After the evaluation was completed, DOT retroactively adopted new guidelines which

---

[2] As we understand the offered documents, the Commission has issued a form which provides for performance ratings of "unsatisfactory," "fair," "good," "very good," and "excellent." The last four categories are further subdivided into three segments. The employee is rated by placing a checkmark in one of the 13 boxes for each of 6 standard factors plus as many as 4 optional factors. For

would have permitted a maximum rating of 18.4. Many, if not all, of the other members of the petitioner's job classification were rated by the retroactive guidelines. When the petitioner discovered this, he requested DOT to correct his rating to reflect the new guidelines, but DOT ultimately refused, claiming that the only means of redress would be to appeal to the Commission if this rating caused him to be furloughed or demoted. Without waiting to be actually furloughed or demoted, the petitioner wrote to the Commission to ask that his rating be corrected.[3] The petitioner was later furloughed twice. He appealed both furloughs, raising the issue of his incorrect rating in both appeals. For the reasons discussed hereafter, this evidence would have had great bearing on the question of whether the petitioner had filed a timely appeal concerning his performance rating, and the Commission erred in excluding it.

In *Ellis v. Department of Transportation, supra,* we held that an employee of DOT must appeal a per-

---

some unexplained reason, DOT has assigned numerical values to each of the 13 boxes, ranging from zero for "unsatisfactory" to 24 for the highest "excellent" rating. The overall performance rating number used to determine furloughs from the classification "Transportation Construction Manager I" was the average numerical value of these individual factor ratings. To illustrate, if an employee received the highest "excellent" rating on all factors, then his overall performance rating would be 24.0.

We note that the system adopted by DOT mandated that employees in the petitioner's job classification be given an overall performance rating of 18.4 or less. As a result, it would be impossible for an employee to receive the highest rating on all factors. If his supervisor rated him as "excellent" on one factor, then the supervisor would be *required* to rate him lower on some other factor or factors. This hardly seems to comply with the intent of the rating system under Section 704 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.704, but the propriety of DOT's rating system is not presently before us.

[3] A copy of this letter was offered to the Commission but was not received in evidence.

formance rating within 20 days of its issuance if he wishes to challenge it. This time limit begins to run, as it does in any administrative proceeding, when the employee receives notice that a final determination has been made by DOT. *See Stewart v. Department of Public Welfare,* 48 Pa. Commonwealth Ct. 44, 408 A.2d 1188 (1979) (appeal time began to run when employee had notice); *Eash v. State Civil Service Commission,* 17 Pa. Commonwealth Ct. 199, 331 A.2d 601 (1975) (employee was not aggrieved for purposes of determining whether appeal was timely so long as department action was prospective or speculative).

In the present case, the petitioner concedes that he did not appeal the rating of 18.0 within 20 days of September 26, 1977. His proffered evidence would have established, however, that he had no reason to appeal that rating because the guidelines under which he was rated prohibited a rating in excess of 18.0. The final decision which the petitioner did attempt to appeal, he asserts, was the decision not to adjust the rating score to conform with the retroactively applied guidelines which established 18.4 as the maximum rating. He may have been able to establish that the appeal was taken within 20 days of receiving notice of a final determination by DOT.[4]

On the other hand, the petitioner might have been able to establish a timely appeal, regardless of the 20-day time limit, based upon an estoppel arising from the representations of his superiors at DOT. This Court has held that a party before an administrative

[4] If the Commission previously acted on the petitioner's appeal of DOT's refusal to conduct a new evaluation, that decision would, of course, be controlling. *See Thal v. Krawitz,* 365 Pa. 110, 73 A.2d 376 (1950). Most of the confusion in the present appeal could have been avoided if evidence of a final disposition of the earlier appeal had been introduced. In the absence of evidence on the point, however, we will assume that any appeal which may have been filed is still pending.

agency may not invoke the doctrine of estoppel to extend a mandatory time limit, unless he has been induced to relax his vigilance by some affirmative fraud, deception, or concealment of fact. *Tin Nyo v. Pennsylvania Labor Relations Board,* 53 Pa. Commonwealth Ct. 646, 419 A.2d 244 (1980). "[A]pplication of the doctrine of estoppel should not be denied merely because it is being asserted against the government." *Department of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 514, 397 A.2d 779, 785 (1979).

Attempts to invoke estoppel against a Commonwealth agency frequently meet with failure because of the difficulty of proving all of the necessary elements. In *Shimko v. Unemployment Compensation Board of Review,* 54 Pa. Commonwealth Ct. 578, 422 A.2d 726 (1980), for example, the claimant was prevented from invoking estoppel because her reliance on alleged oral misrepresentations of an employee of the Office of Employment Security was not justified. A workmen's compensation claimant failed to establish inducement and justifiable reliance in *Nevius v. Workmen's Compensation Appeal Board,* 52 Pa. Commonwealth Ct. 418, 416 A.2d 1134 (1980). Similarly, in *Berry v. Unemployment Compensation Board of Review,* 33 Pa. Commonwealth Ct. 565, 382 A.2d 487 (1978), *aff'd,* 488 Pa. 180, 411 A.2d 1198 (1980), the Board found that the claimant's testimony that he had been misled was not credible.

There are many other cases, however, in which the doctrine of estoppel has been applied to Commonwealth agencies. The Supreme Court relied on the doctrine in *Department of Public Welfare v. UEC, Inc., supra,* and held that a state contractor was not barred by a statute of limitations from suing the Commonwealth on a contract where the Secretary of the Department of Welfare had led the contractor to believe that the claim would be settled amicably. The

Court provided a lengthy discussion on the question of estoppel. 483 Pa. at 514-15, 397 A.2d at 785. *See also Grottenthaler v. Pennsylvania State Police,* 488 Pa. 19, 410 A.2d 806 (1980) (Commonwealth estopped from arguing that a provision of a collective bargaining agreement was invalid); *Department of Revenue v. King Crown Corp.,* 52 Pa. Commonwealth Ct. 156, 415 A.2d 927 (1980) (attorney general estopped from denying a settlement agreement with a private corporation).

Some of the cases, notably *Commonwealth v. Western Maryland Railway,* 377 Pa. 312, 105 A.2d 336 (1954), have relied on a distinction between "governmental" and "proprietary" activities to determine whether the doctrine of estoppel could be invoked against Commonwealth agencies. These cases generally involved a claim of estoppel based upon laches and could be set apart from cases involving an active concealment or misrepresentation, but we need not do so since the distinction has apparently been abandoned. *See Department of Public Welfare v. UEC, Inc., supra.*

The underlying premise of the estoppel cases is that the doctrine of estoppel *may* be applied to a Commonwealth agency, in cases in which it has intentionally or negligently misrepresented some material fact, knowing or having reason to know that another person will justifiably rely on that misrepresentation, and where that other person has been induced to act to his detriment because he did justifiably rely on that misrepresentation. It is not inconceivable that the petitioner in this case could have established these elements, especially if there were no written guidelines for requesting a new performance rating.

For these reasons, we will vacate that portion of the decision and order of the Commission, dated July 24, 1980, which denied the appeal of Manfred R.

Hauptmann, and remand so that additional evidence may be presented on the questions of whether the petitioner had filed a timely appeal from the refusal of DOT to execute a new performance evaluation and whether the Commission has made a final determination of such an appeal. If an appeal was timely filed and not resolved, we would encourage the Commission to dispose of that appeal before making a final determination in the instant appeal.

Therefore, we enter the following

ORDER

AND Now, this 27th day of May, 1981, that portion of the decision and order of the State Civil Service Commission, dated July 24, 1980, which denied the appeal of Manfred R. Hauptmann is vacated, and the case is remanded for further proceedings consistent with the above opinion.

Judge WILKINSON, JR. did not participate in the decision in this case.

