Central Dauphin School District, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Argued September 18, 1981, before Judges ROGERS, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*Edward E. Knauss, III, Metzger, Wickersham, Knauss & Erb,* for petitioner.

*Phillip A. Ayers,* Counsel, with him *Michael A. Davis,* Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., December 2, 1981:

This is an appeal by petitioner Central Dauphin School District from an order of the Department of Education dismissing petitioner's complaint.

During the spring and early summer months of 1979, the School District contemplated a proposed refunding of a major portion of its bonded indebtedness. In connection with the proposed refunding, the School District retained the firm of L. F. Rothschild, Unterberg, and Towbin (Rothschild) as its investment broker and financial adviser. On June 21, 1979 Robert Fowler (Fowler), an agent and employee of Rothschild, and acting for and on behalf of the School District, visited Harold E. Gaughan (Gaughan), an employee of the Department of Education. During this meeting, Fowler requested approval of Rothschild's method of calculating the percentage of reimbursement which the School District would receive from the Commonwealth on the refunding bond issue (hereinafter referred to as the "Rothschild proposal"). At that time, Gaughan indicated to Fowler that the calculations were subject to review and final approval by Gaughan's immediate supervisor, Thomas R. Heslep (Heslep), Chief of the Division of Physical Plant and Construction in the Bureau of Support Services of the Department of Education.

During the afternoon of June 21, 1979, Gaughan contacted Fowler and indicated that the Department would employ the method of calculating the reimbursement percentage reflected in the Rothschild proposal.[1] In the evening of the same day, the Board of Directors of the School District contracted with Rothschild for the underwriting of the refunding bonds. Pursuant to the contract, Rothschild was to purchase the bonds in an amount reflecting the calculations submitted to the Department by Fowler.

---

[1] The School District asserts that Gaughan advised Fowler that the calculations submitted to the Department had been approved by Heslep. The testimony adduced before the hearing examiner, however, indicates that such a representation was not made to Fowler or any other agent of the school district.

On June 22, 1979 the Board of Directors adopted the School District's budget for the ensuing fiscal year, which commenced July 1, 1979. The budget reflected, in part, the amount of debt service required under the Rothschild proposal.

Subsequent to June 22, 1979, Heslep reviewed the Rothschild proposal and determined that the proposal violated School Building Standard 349.20(c),[2] in that the fiscal commitment of the Commonwealth was thereby increased.[3] In accordance with this determination, Gaughan advised Fowler that, in order to comply with the mandates of 349.20(c), an alternative method of calculating the percentage of reimbursement would be employed by the Department. By letter dated August 1, 1979, Heslep advised the School District of the reimbursement percentage which would be applicable to the refunding bond issue. On August 2, 1979 settlement on the refunding bonds occurred between the School District and Rothschild. The revised calculations resulted in reduced reimbursement to the School District over the life of the bonds in the amount of approximately $176,000.00.

---

[2] 22 Pa. Code §349.20(c).

[3] School Building Standard 349.20(c) provides:

Refunding of bond issues. When, in its judgment, the refunding of school district bond issues is in the best interest of the Commonwealth or the school district, or both, and consistent with the purposes of the Local Government Unit Debt Act (53 P.S. §§6780-1-6780-608) (reenacted, amended, and revised by the act of April 28, 1978 (P.L. 124, No. 52)), the Department will approve and adjust to such refundings; provided that the Commonwealth will share, in appropriate proportion, any savings realized by the refunding; and under no circumstances will the Commonwealth's remaining fiscal commitment be increased because of an approved refunding. Any bond fund accumulations for any issues which are to be included in a refunding bond issue must be used to reduce the total amount of the refunding issue.

On August 9, 1979 the School District filed a complaint with the Department of Education requesting that the Department apply the reimbursement percentage which had been proposed, through Fowler, by the School District. The parties agreed to an appeal procedure whereby the issue was submitted to a hearing examiner appointed by the Secretary of Education. Following an evidentiary hearing conducted January 18, 1980, the hearing examiner filed a report and recommended denial of the School District's appeal. By order dated October 9, 1980, the Secretary of Education accepted and approved the report of the hearing examiner and dismissed the School District's complaint. The School District has appealed to this court from the aforesaid order.

The School District has advanced a theory of equitable estoppel against the Department as the basis for seeking approval of the reimbursement percentage reflected in the Rothschild proposal. In this regard, the School District argues that the Department, through its employee, Gaughan, made a representation to the District through its agent, Fowler, that the calculation of the reimbursement percentage submitted to Gaughan on June 21, 1979 would be applicable to the refunding bond issue. The School District further asserts that it contracted with Rothschild to underwrite the sale of the bonds in reliance upon Gaughan's representation, and that the subsequent revision of the calculations by the Department resulted in financial detriment to the School District.

Historically, Pennsylvania courts have been reluctant to apply the doctrine of equitable estoppel against the Commonwealth and its agencies. *See, e.g., Commonwealth v. Western Md. Ry.*, 377 Pa. 312, 105 A.2d 336 (1954), *cert. denied,* 348 U.S. 857 (1954); *Commonwealth v. Rohm and Haas Co.*, 28 Pa. Commonwealth Ct. 430, 368 A.2d 909 (1977). That re-

luctance, however, is diminishing, particularly because "[t]he grounds generally advanced for this reluctance bear striking similarity to those offered in support of the doctrine of sovereign immunity," *Department of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 514, 397 A.2d 779, 785 (1979), a doctrine which has recently been discarded as "unfair and unsuited to the times," *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 386, 388 A.2d 709, 709-710 (1978).

The leading decision in which estoppel principles were applied against the Commonwealth is *Department of Public Welfare v. UEC, Inc., supra*. In that case, the Commonwealth wrongfully terminated a written contract with UEC. Over a two year period, the Commonwealth, through several state officials including the Governor, repeatedly assured UEC of its intention to pay UEC the balance due under the contract. At some point during this period, however, a dispute arose as to the exact amount of compensation remaining to be paid. Following negotiations, a settlement was reached. When the Commonwealth refused to pay UEC in accordance with the terms of the settlement agreement, UEC instituted an action seeking enforcement thereof. The Commonwealth asserted that the claim was barred by the running of the applicable six-month statute of limitations. The Pennsylvania Supreme Court held that the Commonwealth was estopped from asserting the statute of limitations as a defense, finding that UEC was lulled into a false sense of security regarding the necessity for instituting legal action by the Commonwealth's repeated assurances of its intention to pay its obligation.

More recently, the estoppel doctrine was applied against the Commonwealth by this court in *Department of Revenue, Bureau of Sales and Use Tax v.*

*King Crown Corp.,* 52 Pa. Commonwealth Ct. 156, 415 A.2d 927 (1980). In this case, an Assistant Attorney General wrote to King Crown Corporation advising that the Commonwealth had accepted King Crown's settlement proposal for the payment of delinquent taxes. Eight months later, and after King Crown had commenced making installment payments on the taxes, the Commonwealth repudiated the agreement, asserting that it violated 37 Pa. Code §§131.11 and 131.23[4] because it had neither been approved by the Chief, Commonwealth Collections Division, nor properly documented in the Commonwealth file. This court found that King Crown had reasonably believed, from the letter, that the necessary approvals had been secured and that the documentation requirements had been fulfilled. Accordingly, it was held that under the facts of the case, estoppel was appropriate to preclude the Commonwealth from denying the validity of the compromise, and likewise from repudiating the agreement.

It is thus now clear that the doctrine of equitable estoppel *may* be applied to a Commonwealth agency. *Hauptmann v. Department of Transportation,* 59 Pa.

---

[4] These sections provide as follows:

§131.11. General.

No compromise or writeoff of a claim due the Commonwealth may be approved unless there appears in the file of the case documentation, in the form of memoranda or investigation reports, verifying or controverting some or all of the facts relevant to the claim. If no such documentation is present, the file shall contain a memorandum explaining why such information is not available.

§131.23. Amounts not in excess of $50,000.

If the amount of money which is to be compromised or written off is not in excess of $50,000, and if the file contains the documentation required by the provisions of this chapter, approval may be granted by the Chief, Commonwealth Collections Division.

Commonwealth Ct. 277, 429 A.2d 1207 (1980). The doctrine is one of fundamental fairness, and whether it is applicable is dependent upon the particular facts of each case. It arises when a party has intentionally or negligently misrepresented some material fact, knowing or having reason to know that another will justifiably rely on that misrepresentation, and where that other has been induced to act to his detriment because he did justifiably rely on that misrepresentation. *Id.* Attempts to invoke estoppel against a Commonwealth agency frequently meet with failure because of the difficulty of establishing the necessary elements. *See, e.g., Shimko v. Unemployment Compensation Board of Review,* 54 Pa. Commonwealth Ct. 578, 422 A.2d 726 (1980) ; *Nevius v. Workmen's Compensation Appeal Board,* 52 Pa. Commonwealth Ct. 418, 416 A.2d 1134 (1980).

Instantly, the School District has failed to establish justifiable reliance upon Gaughan's representation, *i.e.,* that the Department would employ the method of calculating the reimbursement percentage reflected in the Rothschild proposal. The School District was aware, through Fowler, that approval of the calculations by Gaughan's superior was a necessary part of the approval process. Furthermore, it is to be observed that the *UEC* and *King Crown* cases involved a constant course of conduct by high government officials who had made written representations. These factors are not present here.

For the reasons set forth above, we affirm the decision of the Department of Education.

ORDER

AND Now, this 2nd day of December, 1981, the order of the Department of Education dated October 9, 1980, is affirmed.